UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CYNTHIA PHELPS, PLAINTIFF

v. CIVIL ACTION NO. 3:07-CV-291-S

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT

**MEMORANDUM OPINION**

Cynthia Phelps was injured in an automobile accident caused by Lindey Kirby in July 2003. She eventually recovered $50,000 from Kirby's insurer, State Farm Mutual Automobile Insurance Company. Though that was the limit of State Farm's exposure under its contract with Kirby, Phelps filed suit alleging that State Farm had engaged in dilatory tactics amounting to bad faith in violation of Kentucky's Unfair Claims Settlement Practices Act (UCSPA), KRS 304.12-230. After discovery, State Farm moved for summary judgment. For the reasons explained below, that motion will be granted in part, with the balance held under submission pending the filing of additional evidence and briefing.

**I**

The facts of the case, viewed in the light most favorable to the plaintiff, are as follows. Phelps was driving south on New Cut Road in Louisville when Kirby pulled out of a gas station and into the roadway directly in Phelps's path. Lacking time to stop, Phelps's vehicle struck Kirby's, leaving Phelps (and her daughter, Jaylee Southwood) injured. There is no doubt that Kirby was responsible for the wreck. Phelps was transported to Caritas Medical Center, where an examination revealed a herniated disc requiring surgery. She underwent the procedure on October 15, 2003, and submitted a claim to State Farm (as Kirby's insurer) for her personal injuries and for damage to her vehicle as a result of the accident.

State Farm began an investigation of the incident and of the claimant's medical history, which in February 2004 revealed that Phelps had preexisting back problems arising out of an earlier (1999) car accident. To the extent that the plaintiff's surgery bills might have been attributable to the 1999 accident, State Farm reasoned that it may not have been responsible for them; it therefore decided that further inquiry was in order. Meanwhile Phelps's attorney (Thomas Carroll) sought to settle the case, and sent a letter (dated March 25, 2004) valuing his client's damages for medical expenses and lost wages at $22,620.22 and requesting information on the limits of Kirby's insurance policy. State Farm did not respond to this request, and did not immediately tender a settlement offer. On October 24, 2004, the insurer received a set of medical records reflecting that Phelps had undergone her last treatment for the 1999 injuries in May of that year. Shortly after receiving the records, State Farm (having assessed the claim's total value at between $24,620 and $49,620) offered to settle the claim for $25,000.

Carroll viewed this offer as "unrealistically low unless that was the extent of policy limits." (Carroll Aff. ¶ 3.) However, he did not respond for several months despite having been contacted by State Farm to discuss the matter on January 3, 2005. On March 29, 2005 Carroll finally called State Farm to discuss the matter. (Lirely Dep. 46-47.) At that time he opined that the case was worth as much as $150,000 and again requested information about the limits of Kirby's insurance policy. (Carroll Aff. ¶ 3.) State Farm's representative declined to answer that question, asserting that she was not required to release such information. (*Id.*) Negotiations went no further, and Carroll filed suit on his client's behalf on April 25, 2005.

As the result of discovery in that case, State Farm obtained a more complete set of medical records and additional documentation of the plaintiff's wage loss via her tax records. Phelps also

testified in her deposition to the effect that she had fully recovered from her 1999 injury by the time of the 2003 accident. Following the deposition State Farm's counsel advised the insurer that Phelps would make a credible witness and that it should increase its offer in order to settle the case. (Jones Dep. 18.) State Farm's counsel revealed its policy limits to Carroll in early April 2006, at which point Carroll offered to settle for the full $50,000. State Farm counteroffered $40,000, which Carroll refused. State Farm then apparently learned of $14,656 in additional medical bills (*id.* at 22), and shortly thereafter offered to pay the full amount of its policy limits. (Plaintiff's counsel disputes that there were any new medical bills (Resp. 5), but the garbled language of the paragraph in which he does so and the lack of pinpoint citations leaves the court unsure of the grounds for his objection.[1]) Carroll accepted that offer and settled the underlying case—Kirby was in his view judgment-proof, so there was no sense pursuing a suit against her for the additional $100,000 he felt his client's claim to be worth. Phelps thereafter filed this lawsuit in state court for violation of the UCSPA.

State Farm removed on the basis of diversity of citizenship: the parties are citizens of different states (Kentucky and Illinois, respectively), and the plaintiff's claim for punitive damages renders it "more likely than not" that more than $75,000 is at issue. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993); 28 U.S.C. § 1332. Accordingly, Kentucky substantive law will govern the dispute. *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008).

**II**

A party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that the movant is therefore entitled to judgment as a matter of law. Fed.

---

[1] The complete, unedited text of that paragraph follows ("Jones" is State Farm Claims Representative Lillian Jones):
    Although she logged $14,656.66 in additional medicals, Jones admitted that there were no additional
    medicals. (Ex. 5, Neises Depo. Ex. 5 (also Jones Depo. Ex. 4)) she indicate medical bills had been
    received from PIP on February 20, 2004.

R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in the light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The UCSPA enumerates seventeen "unfair claims settlement practices." Phelps invokes three of them in her Response (at 12):

> (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> . . .
> (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; [and]
> (7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds[.]

KRS 304.12-230. Kentucky recognizes a cause of action for the enforcement of these provisions. KRS 446.070; *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988).

We can immediately dispose of the claim under KRS 304.12-230(7). As now-Chief Judge Russell wrote in *Meador v. Ind. Ins. Co.*, 2007 U.S. Dist. LEXIS 27298, at *21 (W.D. Ky. Apr. 12,

2007), "[t]he wording of KRS 304.12-230(7) is clearly limited to first-party bad faith claims against an insurer. Since the [plaintiffs] are third-party claimants, not insureds, they cannot maintain a bad faith claim under KRS 304.12-230(7)" (footnote omitted). Exactly the same result obtains here, and State Farm is entitled to judgment as a matter of law on the claim under subsection (7).

Summary judgment will also be granted insofar as the complaint relies on KRS 304.12-230(3). Phelps has not argued that State Farm's policies as a whole are unreasonable. Nor have her experts expounded on that company-wide issue. Rather, everyone on her side has focused on the particulars of her case, and on whether she herself was badly treated in this instance. Consequently there is no evidence in the record to support a claim under subsection (3).

The parties expend most of their energies arguing over whether there is enough evidence to send the bad faith claim under subsection (6) to a jury. That cause of action requires proof of three elements: (1) that the insurer was obligated to pay the claim; (2) that the insurer lacked a reasonable basis in law or fact for failing to pay the claim; and (3) that the insurer either knew there was no reasonable basis for failing to pay or that it acted with reckless disregard for whether such a basis existed. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997) (*citing Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). To prevail, a plaintiff must present evidence of the sort of conduct that warrants a punitive damages instruction—that is, evidence of "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Wittmer*, 864 S.W.2d at 890 (citations omitted). Finally, "a condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." *Glass*, 996 S.W.2d at 452. Thus punitive damages are unavailable absent proof of actual damages, the latter being a necessary element of the claim.

That last requirement—actual damages—has been completely ignored in the parties' briefs, notwithstanding the fact that it has been on the books for well over a decade. The complaint demands four categories of damages, in addition to punitives: being "[f]orced to incur court costs, deposition costs and other litigation expenses"; "[p]hysical pain and mental suffering, humiliation, embarrassment, loss of work, anxiety and worry"; attorney's fees; and interest. If the first and third categories are cognizable classes of damages (we do not decide that question), it could only be under subsection (7)'s prohibition on forcing first-party claimants to file suit. But as we have said that provision does not apply here. Absent a statute, and there is none here, third-party claims may not properly include attorney's fees and litigation expenses except insofar as they are allowed as costs to a prevailing party under our Rules.

This leaves only the second and fourth categories as potentially recoverable, but because the parties have paid no attention to the damages issue there is no evidence under submission to support either of them. Absent evidence of this "condition precedent," summary judgment for State Farm is warranted regardless of its actions. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") We are, however, wary of granting the motion on an unargued basis without giving Phelps an opportunity to respond. Accordingly we will order her to file with the court evidence of her actual damages, together with a memorandum articulating her basis for believing that they resulted from State Farm's allegedly dilatory practices. We pause here to emphasize two points. First, as explained above only two of the claimed categories of damages are actually

recoverable: physical and mental suffering, humiliation, anxiety and worry; and interest. The court will disregard evidence and argument on damages not falling into one of these categories. Second, because the plaintiff has settled and dismissed the underlying suit, the only damages she can claim in this action are for injuries sustained as a result of State Farm's allegedly unreasonable delay in offering her the $50,000 limit of its policy. Thus for instance to claim damages for humiliation she will have to show that having to wait for a fair settlement offer humiliated her, and so on. Once the plaintiff has filed her evidence and memorandum, State Farm will be afforded the chance to file a reply, together with such additional evidence as is necessary to support its position.

      A separate order will implement the decisions reflected above.